KATZ, MARSHALL & BANKS, LLP

Debra S. Katz, Esquire
Direct Dial: 202-299-1143
katz@kmblegal.com

Leave to file GRANTED
Robert L. Wilkins 6/5/2013
Robert L. Wilkins Date
United States District Judge

By Hand-Delivery
May 30, 2013

FILED
JUN - 5 2013
Clerk, U.S. District & Bankruptcy Courts for the District of Columbia

Judge Robert L. Wilkins
U.S. District Court for the District of Columbia
333 Constitution Ave., N.W.
Washington, DC 20001

Re: United States of America v. Scott J. Bloch, No. 1:13-CR-00005-RLW

Dear Judge Wilkins:

I am counsel for a group of former employees of the U.S. Office of Special Counsel ("OSC") and for the Project on Government Oversight ("POGO"), the Government Accountability Project ("GAP"), and Public Employees for Environmental Responsibility ("PEER"), national whistleblower protection groups, on whose behalf I submitted a whistleblower retaliation complaint with the President's Council on Integrity and Efficiency ("PCIE") against Defendant Scott J. Bloch, the former head of the U.S. Office of Special Counsel ("OSC"). See Complaint of Prohibited Personnel Practices Against Special Counsel Scott Bloch, attached hereto as Exhibit A. Former President George W. Bush referred this complaint to the Office of the Inspector General of the Office of Personnel Management ("OPM OIG") for investigation. During the course of the OPM OIG's investigation, Defendant Bloch repeatedly took steps to impede the investigation and engaged in obstruction of justice, including through the destruction of evidence.

I am writing to provide the Court with information about the circumstances and the context in which Mr. Bloch's destruction of government property and obstruction of justice occurred, as well as his subsequent refusal to accept responsibility for his actions. As discussed below, I respectfully urge this Court, on behalf of those directly and indirectly aggrieved by Mr. Bloch's actions, to impose a sentence at the upper end of the appropriate Sentencing Guidelines range of 6-12 months' imprisonment and a fine of $2,000 to $20,000. I further request that the Court make this letter part of the record in this case, as it indicated at the May 13, 2013, hearing it would do.

On November 28, 2007, while the OPM OIG's investigation was underway, the *Wall Street Journal* reported the shocking revelation that in December 2006 Mr. Bloch had hired an outside IT company, "Geeks On Call," which performed a "seven-level wipe" of his OSC computer, as well as the computers of his two top deputies. See Exhibit B. This computer wipe – the most thorough deletion possible – destroyed all of the documents, files, and emails on his

computer and that of his deputies, who had recently left OSC.[1] In so doing, Mr. Bloch not only rendered thousands of documents potentially critical to the federal investigation unavailable to investigators, but also made it nearly impossible for forensics experts to restore the deleted data. While Mr. Bloch claimed that only personal files on his computer were affected, he paid for the work using over $1,000 in government funds; he then refused to permit investigators to review the portable flash drive to which he had copied his computer's files. See id. These events prompted the FBI to raid Mr. Bloch's OSC and home offices on May 7, 2008. Ultimately, the White House removed Mr. Bloch from his position in October 2008.

Not only did Mr. Bloch destroy or permit to be destroyed potentially relevant evidence in the midst of a federal investigation into his wrongdoing, he then willfully withheld information about this matter from Congress, as he admitted in a Statement of Offense in the previous case against him. See Memorandum in Aid of Sentencing (July 13, 2010), attached hereto as Exhibit C, at p. 2-5. For example, on December 7, 2007, a spokesperson for Mr. Bloch reported that Mr. Bloch "also had the computers of former aides who had departed the agency wiped because the computer technicians arrived at the office while Bloch was not present and were billing the agency for their time." See *Government Executive*, Dec 7, 2007, attached as Exhibit D. Mr. Bloch conceded that he later contradictorily told congressional investigators, however, that he had no knowledge of technicians working on any computers other than his own. See Exhibit C at p. 4-5. I detailed these abuses by letter to President Bush dated April 29, 2008. A copy of this letter is attached hereto as Exhibit C.

Given the magnitude of Mr. Bloch's misconduct, it is not clear why the Department of Justice is intent on giving Mr. Bloch a mere "slap on the wrist" by bringing minor charges against him and seeking minimal sentences – going so far as to argue that Mr. Bloch be allowed to withdraw a guilty plea or be given a lesser sanction than mandated by the applicable statute. If the Government and Mr. Bloch have their way, he will be allowed to escape with relative impunity. For many reasons, it is imperative that Mr. Bloch be given a much stiffer sentence

---

[1] While Mr. Bloch has claimed that he sought out Geeks on Call due to a problem with his computer – at the time, he claimed that he was trying to eradicate a virus that had seized control of his computer – this assertion was a bald-faced lie. OSC has its own, highly capable IT department to perform such IT functions, and OSC does not bring in "Geeks On Call" if a computer is not working, and certainly not for a fairly routine issue like a virus. Indeed, this would likely represent a violation of OSC policy, as this outside access to an OSC computer would represent a potential security risk. Moreover, as detailed in the April 27, 2010 Statement of Offense, described herein, Mr. Bloch disingenuously informed Congress that he never discussed the supposed problem with his computer with the Geeks On Call specialist before that person performed a seven-level wipe – as if IT professionals routinely delete all files on a computer, rending all information on the computer completely and permanently irretrievable, before ascertaining what the problem is or whether such a drastic approach is remotely necessary. To the contrary, as the manager of "Geeks On Call" confirmed to the *Wall Street Journal* at the time: "We don't do a seven-level wipe for a virus." See Exhibit B.

than the Government has proposed, and one proportionate to his misconduct. Mr. Bloch, a presidential appointee, abused an office of great public trust and authority, and he has repeatedly refused to accept responsibility for his wrongdoing – contrary to the Government's assertion in its April 29, 2013 Memorandum in Aid of Sentencing in the above-captioned case ("Sentencing Memorandum"). See Exhibit E at p. 4. Indeed, outside the context of the criminal proceedings against him, where he has feigned contrition, Mr. Bloch has attacked anyone who has sought to hold him accountable for his actions, including by filing a frivolous lawsuit against the United States Office of Personnel Management ("OPM"), filing a frivolous $202-million lawsuit against individuals Mr. Bloch perceived to be responsible for the situation in which he now finds himself, and by threatening commentators who have made (justifiably) negative statements about his conduct. Moreover, Mr. Bloch made every effort to obstruct and impede the Government's investigation into his misconduct as Special Counsel, including his actions in wiping government computers, which form the basis for the charge currently pending against him. A failure to give Mr. Bloch jail time would not only him to escape meaningful punishment for his actions, but would also send a message to others in similar positions of power that they are free to retaliate against whistleblowers without fear of serious repercussions and to destroy evidence and lie to Congress when they are caught having done so.

In postponing the sentencing hearing scheduled for May 13, 2013, this Court correctly observed that the record provided to the court by the Department of Justice and by counsel for Defendant Bloch failed to provide the court with the context in which Defendant Bloch committed the criminal act to which he pleaded guilty or the conduct that gave rise to the charges against him. In particular, the Court noted that the Government's Sentencing Memorandum failed to address two factors that are key to determining an appropriate sentence for Mr. Bloch, namely his apparent abuse of the trust and authority of his office and his obstruction of justice – each of which warrants an increase in the recommended penalties for a violation of 18 U.S.C. 1361, per the United States Sentencing Commission Guidelines ("the Sentencing Guidelines").[2] I write today to address these aggravating factors and to provide a detailed accounting of Mr. Bloch's misconduct. I urge this Court to consider the totality of the circumstances and the context in which Mr. Bloch's destruction of government property occurred, as well as his subsequent refusal to accept responsibility for his actions. I ask on behalf of those directly and indirectly aggrieved by Mr. Bloch's actions that this Court impose a sentence at the upper end of

---

[2] As discussed further in Section III, *infra*, the crime to which Mr. Bloch pled guilty is a Class A misdemeanor, for which the maximum fine is $100,000. See 18 U.S.C. § 3559(a)(6); 18 U.S.C. § 3571(b)(5). Mr. Bloch's violation of 18 U.S.C. § 1361 also allows for imprisonment of up to one year. For the reasons stated herein, I believe that Mr. Bloch's actions warrant the maximum statutory penalty; however, I analyze the appropriate penalty with reference to the Sentencing Guidelines, as the Government has done, to contrast the appropriate classification of the crime with that for which the Government has argued.

the appropriate Sentencing Guidelines range of 6-12 months' imprisonment and a fine of $2,000 to $20,000.[3]

## I. Background of the Criminal Proceedings against Mr. Bloch

On April 27, 2010, Mr. Bloch pled guilty to one count of misdemeanor contempt of Congress, in violation of 2 U.S.C. § 192. As part of the plea deal, the United States agreed "not to oppose a sentence at the low end of the applicable [United States Sentencing Commission] Guidelines range [of] 0 to 6 months." The Government further indicated that it intended to support a request by Mr. Bloch that he receive only a sentence of probation.

On July 15, 2010, I submitted a victim impact statement to Magistrate Judge Robinson, which detailed the civil whistleblower retaliation issues that gave rise to Mr. Bloch's criminal case. I advised Judge Robinson then that we opposed a sentence of probation for Mr. Bloch because it did not appropriately reflect the severity of his admitted actions.

Although Mr. Bloch was originally scheduled to be sentenced on the contempt of Congress charge on July 23, 2010, that sentencing date was continued several times as the U.S. Attorney's Office and Mr. Bloch's counsel disputed that 2 U.S.C. § 192 carried with it a mandatory minimum sentence of one month of imprisonment. After extensive briefing on the subject, Magistrate Judge Robinson entered a Memorandum Opinion on February 2, 2011, holding that the plain language of the statute made clear that conviction for contempt of Congress mandated a one-month sentence of imprisonment. Magistrate Judge Robinson noted that Mr. Bloch had knowingly and voluntarily pled guilty, fully aware of the penalties for which the statute provided. She ordered a hearing to impose a sentence consistent with these findings.

On August 3, 2011, Chief Judge Royce C. Lamberth reversed Magistrate Judge Robinson's decision and allowed Mr. Bloch to withdraw his guilty plea. Judge Lamberth observed that the plea agreement made no mention of a mandatory minimum sentence, and that the record indicated that neither the prosecution nor the defense believed that a sentence of one month of imprisonment was required upon conviction for a violation of 2 U.S.C. § 192. Judge

---

[3] Per the Sentencing Guidelines a violation of 18 U.S.C. § 1361 is a level-6 offense, which carries a recommended sentence of 0-6 months in jail and a fine of $500 to $5,000. As detailed below, the Government cited Mr. Bloch's purported acceptance of responsibility for his actions and incorrectly applied a two-level reduction to the base Sentencing Guidelines range for Mr. Bloch's crime, concluding that he had committed only a level-4 offense. In fact, Mr. Bloch never meaningfully accepted responsibility for his actions, and thus should not receive such a reduction. Moreover, his abuse of a position of public trust warrants a two-level increase under the Sentencing Guidelines, as does his obstruction of the investigation into his misconduct. Accordingly, the appropriate Sentencing Guidelines level is 10, which carries with it the recommended penalties described above.

Lamberth further noted that it was apparent that Mr. Bloch believed he could receive a sentence of probation, and that he would not have pled guilty had he been informed that he faced a mandatory minimum prison sentence.

On December 21, 2012, the Department of Justice moved to dismiss the contempt of Congress charge against Mr. Bloch and filed a new charge against him. The criminal information accused Mr. Bloch of misdemeanor injury to or depredation of government property, in violation of 18 U.S.C. § 1361 did not address the fact that Mr. Bloch had destroyed evidence in order to cover up incriminating information during a federal investigation into his conduct. Rather, the information focused merely on the fact that he had ordered the wiping, depriving the government of data thereon and (temporarily) of the use of three computers. The information alleged that the value of the property destroyed was less than $1,000.

On February 12, 2013, Mr. Bloch pleaded guilty before this Court to a violation of 18 U.S.C. § 1361. The statute provides for assessment of a fine or by imprisonment for not more than one year, or both. The Sentencing Guidelines recommend a range of probation to six months imprisonment. In its Sentencing Memorandum, filed with this Court on April 29, 2013, the United States Attorney's Office again agreed – as it had in the contempt proceedings – not to oppose a sentence for Mr. Bloch "at the lowest end of the recommended [United States Sentencing Commission] guidelines range." Exhibit E at p. 1. The Government requested that if the Court sentenced Mr. Bloch to probation, it also impose a $5,000 fine and 200 hours of community service. Such a sentence, in light of the breadth and depth of Mr. Bloch's misconduct, would be woefully inadequate.

## II. <u>Factual Background</u>

### A. Subject of the Federal Investigation

Upon taking office as head of the OSC on January 5, 2004, one of Mr. Bloch's first official acts was to order that all references to OSC's jurisdiction over complaints of sexual orientation discrimination against federal employees be removed from OSC's website and its official publications. This action – which was contrary to longstanding federal policy and Mr. Bloch's own assurances during his Senate confirmation process – immediately brought tremendous concern both from the public and from Congress.[4] Even the White House issued a

---

[4] Among the Congressional inquiries was a February 19, 2004, letter from the Senate Committee on Governmental Affairs, signed by both Chairman Susan Collins (R-Maine) and ranking minority member Joseph Lieberman (D-Connecticut), among others; a March 4, 2004, letter from Rep. Shays (R-Connecticut), Rep. Greenwood (R-Pennsylvania), and Rep. Simmons (R-Connecticut); and a separate March 4, 2004, letter signed by 70 other Members of the House of Representatives. <u>See</u> Exhibit F. The letter from Senators Collins and Lieberman expressed concern that Mr. Bloch's decision to remove all references to jurisdiction over sexual orientation discrimination complaints "appears inconsistent with . .

public statement that Mr. Bloch's action appeared contrary to "[l]ong-standing federal policy [which] prohibits discrimination against federal employees based on sexual orientation. President Bush expects federal agencies to enforce this policy and to ensure that all federal employees are protected from unfair discrimination at work." See Exhibit G. Indeed, federal employees had been protected from sexual orientation discrimination dating back to 1980, but Mr. Bloch's unauthorized action effectively removed that longstanding protection. In addition, Mr. Bloch permitted the complaints of several hundred federal whistleblowers to be dismissed without any investigation, effectively leaving those federal employees without any remedy for the retaliation they had experienced.

When Mr. Bloch then suspected that members of his staff were speaking to the media about his unlawful policies, he reacted by imposing a "gag order" for all OSC employees, announcing a new OSC policy that "any official comment on or discussion of confidential or sensitive internal agency matters with anyone outside OSC must be approved in advance by an IOSC official [i.e. Mr. Bloch or a member of his political staff]." See Exhibit H. This restriction on government employees' speech not only violated their First Amendment rights, but also violated the Anti-Gag statute and the Lloyd LaFollette Act, which prohibit non-disclosure requirements which bar federal employees from speaking with Congress or from disclosing potential legal violations with authorized federal agencies.[5]

In January 2005, in an effort to purge the OSC of employees Mr. Bloch believed may have been responsible for exposing his violations of law, he then announced the involuntary geographical reassignment of 12 career OSC employees from the D.C. office, most of them to a newly-planned office in Detroit. He further announced that employees who did not report to their newly assigned offices within 60 days would be summarily terminated. Of the 12 employees involuntarily reassigned, two of them were openly gay; three of them had worked previously at the National Treasury Employees Union, the organization that first brought the

---

.assurances" that Mr. Bloch had given during his Senate confirmation process that he would continue federal government policy of protecting federal employees from sexual orientation discrimination.

[5] The Lloyd LaFollette Act provides that "[t]he right of [federal] employees, individually or collectively, to petition Congress or a Member of Congress, or to furnish information to either House of Congress, or to a committee or Member thereof, may not be interfered with or denied." 5 U.S.C. § 7211. Similarly, the Anti-Gag statute requires that most federal agency actions not "prohibit[] or prevent[], or attempt[] or threaten[] to prohibit or prevent, any other officer or employee of the Federal Government from having any direct oral or written communication or contact with any Member, committee, or subcommittee of the Congress in connection with any matter pertaining to the employment of such other officer or employee or pertaining to the department or agency of such other officer or employee in any way...or to an authorized official of an executive agency or the Department of Justice that are essential to reporting a substantial violation of law." Pub.L. No. 106-554, § 629, 114 Stat. 2763A, 160 (2000)

sexual orientation discrimination controversy to light through a February 12, 2004, press release. Of the seven employees involuntarily reassigned to Detroit, none of them accepted such a reassignment, leaving all of them to either find new jobs outside the agency or be terminated. Ironically, it appeared that the nation's top whistleblower rights enforcer had retaliated against his own employees based on his suspicion that they had blown the whistle on him.

**B. Interference with the Federal Investigation**

The above issues were referred to the OPM OIG, which began to conduct an intensive investigation, including document review and numerous witness interviews. From nearly the very beginning, Mr. Bloch engaged in various efforts to thwart the investigation. First, he refused to cooperate with the investigation under the bogus claim of "attorney-client privilege."[6] Next, one of Mr. Bloch's political deputies instructed all OSC employees that if they were contacted by OPM OIG directly for an interview, they were required to "notify [her] immediately." This attempt to control all witness interviews was contrary to OSC's own published policy, which provides that "OSC reserves the right to contact witnesses directly when appropriate" rather than through an agency liaison. See www.osc.gov/documents/pubs/dr-memo.htm. After receiving negative publicity over this issue, Mr. Bloch was forced to revoke this command. Mr. Bloch's deputy also publicly identified one of the individual complainants by name in a blast email to the entire agency – even though the identities of OSC complainants are required to be kept confidential. Mr. Bloch and/or his political deputies then told OSC employees – the potential witnesses in the federal investigation – that an OSC political appointee would ultimately review the investigation findings and decide whether corrective action was warranted, which was false. Other witnesses reported that Mr. Bloch had discussed with senior staff his desire to compel employees who had been interviewed by the OPM OIG to complete affidavits describing what they had been asked and what they had told investigators; although he was ultimately dissuaded from implementing this plan, Mr. Bloch's desires were widely known among OSC staff. All of these actions served to intimidate witnesses and make them feel that they were putting their careers on the line by cooperating in the investigation.

In April 2007, Mr. Bloch made the rounds of the media announcing that he was launching investigations into alleged violations of law in connection with the highly-publicized termination of a former U.S. Attorney, David Iglesias, despite the fact that the matter was already being investigated by the Department of Justice. He also announced that he had initiated

---

[6] "Federal officials have no attorney-client privilege that can be asserted against federal investigators with respect to consultations with government lawyers." See Simon, William, Propter Honoris Respectum: The Professional Responsibilities of the Public Official's Lawyer: A Case Study from the Clinton Era, 77 Notre Dame L. Rev. 999, 1012 (1998) (citing In re Lindsey, 148 F.3d 1100, 1106 (D.C. Cir. 1998); In re Grand Jury Subpoena, 112 F.3d 910, 921 (8th Cir. 1997), cert. denied, 525 U.S. 1105 (1997)).

a separate investigation of President Bush's then political advisor, Karl Rove. Mr. Bloch publicly used these investigations – and depleted $1,000,000 of OSC's already strained budget – in a transparent effort to insulate himself from potential discipline from President Bush by claiming that any discipline of him would be politically motivated – even though Mr. Bloch had launched these inquiries more than two years after the complaint against him had been filed.

On November 28, 2007, the *Wall Street Journal* reported that in December 2006 Mr. Bloch had hired an outside IT company, "Geeks On Call," which performed a "seven-level wipe" of his OSC computer, as well as the computers of his two top deputies. This computer wipe destroyed all of the documents, files, and emails on his computer and that of his deputies, who had recently left OSC.[7] In so doing, Mr. Bloch intentionally had thousands of documents potentially critical to the federal investigation permanently destroyed and therefore unavailable to investigators. Not even forensics experts were able to restore the deleted data. Mr. Bloch claimed that only personal files on his computer were affected, but he paid for the work using over $1,000 in government funds; he then refused to permit investigators to review the portable flash drive to which he had copied his computer's files. See id. These events prompted the FBI to raid Mr. Bloch's OSC and home offices on May 7, 2008. Ultimately, the White House removed Mr. Bloch from his position in October 2008.

Not only did Mr. Bloch destroy or permit to be destroyed potentially relevant evidence in the midst of a federal investigation, he then willfully withheld information about this matter from Congress, as he admitted in a Statement of Offense in the previous case against him. See Memorandum in Aid of Sentencing (July 13, 2010). Mr. Bloch conceded that he later lied to congressional by telling them that he had no knowledge of technicians working on any computers other than his own.

In light of the foregoing, I respectfully request on behalf of my clients – a group of former employees of the U.S. Office of Special Counsel ("OSC") and POGO, GAP and PEER, national whistleblower protection groups, that Mr. Bloch receive a punishment that properly factors in the magnitude of his crimes and the context in which he committed them.

## III. The Need for a Significant Punishment

### A. Mr. Bloch's Refusal to Accept Responsibility for His Criminal Actions and His Efforts to Punish and Stifle His Critics

---

[7] Mr. Bloch falsely claimed that he sought out Geeks on Call due to a problem with his computer – at the time, he claimed that he was trying to eradicate a virus that had seized control of his computer. However, as the manager of "Geeks On Call" confirmed to the *Wall Street Journal* at the time: "We don't do a seven-level wipe for a virus." See Exhibit B.

In one of many attacks on his perceived enemies, on November 13, 2009, Mr. Bloch filed a lawsuit against the United States Office of Personnel Management ("OPM"), alleging that OPM violated his rights under the Privacy Act, 5 U.S.C. § 552a. Mr. Bloch asserted that the OPM OIG had disclosed to the media and/or members of Congress investigatory records protected by the Privacy Act, including "records of work performed by an outside computer specialist firm, Geeks on Call, on [his] malfunctioning, government-issued laptop computer." As is well known, Mr. Bloch's computer was never malfunctioning, and the "work" Geeks On Call performed was the wiping of data from his and several other government computers. Mr. Bloch's destruction of government property – done to hamper the OPM OIG's investigation into his misconduct – forms the basis for the current criminal charge against him. Nevertheless, Mr. Bloch's Privacy Act suit remains pending in the United States District Court for the District of Columbia. A copy of Mr. Bloch's complaint is attached hereto as Exhibit I.

On April 25, 2010, just two days before Mr. Bloch pled guilty to a charge of misdemeanor contempt of Congress, and within weeks after he appeared before Magistrate Judge Robinson, purportedly accepting responsibility for his actions and expressing contrition to the Court for his criminal misconduct, Mr. Bloch filed the enclosed $202 million lawsuit against the whistleblower groups who reported his misconduct, the government agencies and investigators that investigated and then reported the misconduct to the United States Department of Justice, and several high-level government officials connected with his removal from office, among others, blaming them individually and as part of an alleged conspiracy for his civil and criminal investigation, removal from office, indictment, and conviction. The lawsuit, filed in Fairfax County Circuit Court under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and a host of common-law torts, seeks damages of $202 million: $100 million in compensatory damages, $100 million in punitive damages, and $2 million in litigation expenses. Mr. Bloch also named undersigned counsel as a Defendant in that suit for my role in reporting his misconduct to former President Bush, former White House Counsel Harriett Miers and former White House Counsel Fred Fielding in my capacity as counsel for former OSC employees and the whistleblower protection groups listed above. Ultimately, Mr. Bloch did not serve the complaint, leading to its dismissal for failure to prosecute. Nevertheless, during its pendency, the existence of the complaint negatively affected a number of the named defendants, adversely impacting their credit scores and resulting in the denial of loan applications. A copy of Mr. Bloch's lawsuit is attached hereto as Exhibit J.

Most recently, Mr. Bloch has threatened bloggers who have written about his misconduct. For example, on May 7, 2013, the blog Emptywheel published a March 19, 2013 letter Mr. Bloch sent to a blogger on the letterhead of his law firm.[8] The letter accused the

[8] The Emptywheel blog post is available at http://www.emptywheel.net/2013/05/07/former-bush-special-counsel-scott-bloch-bullies-journalists-and-threatens-1st-amendment-speech-before-his-criminal-sentencing/#more-34266.

blogger of publishing defamatory posts and articles about Mr. Bloch regarding his time as Special Counsel and alleged that the blogger was "not commenting on any public matters that are current." In fact, Mr. Bloch sent the letter just one month after he pled guilty to a crime he committed *while he was head of the Office of Special Counsel* and two months *before* he was scheduled to be sentenced. Mr. Bloch nevertheless threatened the blogger with a suit for defamation and civil conspiracy and threatened to join in the suit any other individuals with whom the blogger had worked. Somewhat ironically, Mr. Bloch essentially demanded that the blogger wipe all of the offending materials by removing them from its "internet site and all blogs and caches." It could not be clearer that Mr. Bloch remains as determined as ever to silence his critics and cover up his misdeeds.

**B. Impact of Mr. Bloch's Wrongdoing**

Mr. Bloch's misconduct had – and continues to have – a tremendous negative impact on a variety of different parties. First, his retaliatory actions caused a considerable toll on the lives and careers of the OSC employees whom he terminated or forced into involuntary transfers. As a result of Mr. Bloch's criminal wrongdoing and the resulting criminal investigation – which has resulted in the OPM OIG investigation being tabled for the past several years – Mr. Bloch's victims have now had to wait more than eight years, and counting, to obtain relief in their whistleblowing complaints.

Additionally, Mr. Bloch's actions caused enormous morale problems at the OSC and nearly destroyed this agency. The OSC describes its mission as follows: "[T]o safeguard the merit system by protecting federal employees and applicants from prohibited personnel practices, especially reprisal for whistleblowing." See OSC website, available at http://www.osc.gov/Intro.htm. The OSC is "an independent federal investigative and prosecutorial agency [whose] basic authorities come from four federal statutes: the Civil Service Reform Act, the Whistleblower Protection Act, the Hatch Act, and the Uniformed Services Employment & Reemployment Rights Act (USERRA)." Id. During his tenure as head of the OSC, Mr. Bloch completely abandoned the OSC's stated mission by punishing rather than protecting federal employees, and he stripped the agency of its credibility, both internally and with the American public. The OSC plays a vital role in the federal government – one that was seriously undermined by Mr. Bloch's actions, leaving its employees doubting the purpose of their work.

Mr. Bloch's misconduct has also had a broader negative impact on thousands of federal employee whistleblowers and on the entire federal workforce. As noted above, Mr. Bloch authorized the wholesale dismissal of hundreds of whistleblower complaints without investigation – leaving dedicated federal employees potentially subjected to unlawful retaliatory conduct with no remedy. Mr. Bloch also refused to enforce longstanding federal policy regarding discrimination of federal employees on the basis of their sexual orientation, leaving

gay and lesbian federal employees discriminated against on this basis, who previously would have been protected by the OSC, with no avenue to bring their complaints or to seek relief.

Moreover, Mr. Bloch's destruction of documents in the midst of a federal investigation and subsequent deliberate withholding of information from Congress damaged the entire federal investigatory system and obstructed justice. We believe that a "slap on the wrist" signals not only to Mr. Bloch, but to every federal official under federal investigation, that the best way out is to destroy documents in order to cover up evidence of misconduct. It would further suggest to such federal officials that there are little consequences to then deliberately withholding information or providing misleading information to the investigators seeking to uncover *that* misconduct – even to Congress.

Finally, Mr. Bloch's conduct has cost taxpayers a tremendous amount of money. From the hiring of Geeks On Call to scrub evidence of his crimes to the filing of frivolous lawsuits, Mr. Bloch has, at every turn, wasted the time and resources of the executive and judicial branches of government, in addition to making misrepresentations to Congress. His misconduct required a massive federal investigation and led to well-founded complaints against his agency. Now, he continues to battle in court the imposition of even a modest sentence that would allow him to escape the felony convictions he rightly deserves – despite having admitted to the underlying misconduct. While Mr. Bloch is of course entitled to exercise his constitutional rights, his actions over the past decade have cost taxpayers dearly at a time when neither they nor the federal government can afford to waste funds.

**C. Factors Warranting Imposition of an Enhanced Sentence**

A conviction for destroying government property valued at less than $1,000 calls for a sentence of "a fine under [Title 18] or by imprisonment for not more than one year, or both." See 18 U.S.C. § 1361. As a crime that carries a maximum penalty of up to one year of imprisonment, 18 U.S.C. § 1361 is a Class A misdemeanor. See 18 U.S.C. § 3559(a)(6). The maximum fine for an individual convicted of a Class A misdemeanor is $100,000. See 18 U.S.C. § 3571(b)(5). While Mr. Bloch's actions warrant the maximum statutory penalty, because the Government has relied on the Sentencing Guidelines in recommending a sanction, I address herein the Government's argument for a reduction in the level of Mr. Bloch's offense, and note that, in fact, a much higher level is appropriate.

Under § 2B1.1(a)(2) of the Sentencing Guidelines, a violation of 18 U.S.C. § 1361 is a base level 6 offense, which calls for a sentence of 0 to 6 months' imprisonment and a fine of $500 to $5,000. In its Sentencing Memorandum, the Government stated, "[Mr.] Bloch's total offense level after acceptance of responsibility is 4," for which the Sentencing Guidelines recommend a sentence of 0 to 6 months of incarceration and a fine of between $250 and $5,000. See Exhibit E at p.4 . A fair sentencing calculation, however, would call for a much higher offense level, given the nature and extent of Mr. Bloch's misconduct, the means by which he

carried out that scheme, his ongoing refusal to accept responsibility for his actions, and the position of trust he occupied in the Office of Special Counsel as a presidential appointee.

Chapter 3 of the Sentencing Guidelines provides for adjustments to the recommended sentence for an offense in light of various aggravating and mitigating factors, and the circumstances here warrant a significant increase in the sentence imposed on Mr. Bloch. The abuse of a position of public or private trust[9] "in a manner that significantly facilitated the commission or concealment of the offense" mandates an increase of two offense levels.[10] See Sentencing Guidelines § 3B1.3. Here, Mr. Bloch used his position as a presidential appointee, entrusted with protecting federal whistleblowers, to conceal extensive misconduct, including, *inter alia*, the destruction of government property. Mr. Bloch hired a third-party vendor, Geeks On Call, at a cost of more than $1,000 in taxpayer dollars, to erase confidential information from government computers during a federal investigation, an action he surely could not have taken but for his position as Special Counsel in the Office of Special Counsel. In committing this crime, he took advantage of the minimal supervision and high level of independence afforded by his office. Accordingly, the two-level enhancement is appropriate.

The Sentencing Guidelines also provide for a two-level increase for obstructing or impeding the administration of justice, an enhancement which is also applicable here.[11] *See* Sentencing Guidelines § 3C1.1. As described above, after hiring Geeks On Call to wipe the data from several government computers while he was under federal investigation, Mr. Bloch claimed that only personal files on his computer were affected and that he had retained Geeks On Call to remove a virus that had seized control of his computer. As a Geeks On Call manager attested, his company would not take the drastic step of performing a so-called "seven-level wipe" of a computer to remove a virus.[12] Having repeatedly lied about the reason he retained Geeks On Call, Mr. Bloch also refused to permit investigators to review the portable flash drive onto which he had copied his computer's files. It is clear that Mr. Bloch's intention was to impede the Government's investigation into all aspects of his misconduct as head of the OSC, including the destruction of government property. As such, the two-level enhancement for obstructing or impeding the administration of justice is appropriate here.

---

[9] The commentary to this subsection defines a position of "public or private trust" as one characterized by "professional or managerial discretion."

[10] The recommended sentence for a level 8 offense is 0 to 6 months' imprisonment and a fine of $1,000 to $10,000.

[11] The recommended sentence for a level 10 offense is 6 to 12 months' imprisonment and a fine of $2,000 to $20,000.

[12] See Exhibit B.

It is beyond reasonable dispute that the foregoing enhancements are appropriate here. Moreover, the Government's recommended two-level decrease for acceptance of responsibility is clearly inapplicable. While entry of a guilty plea and admission of conduct may warrant a downward departure under § 3E1.1 as evidence of acceptance of responsibility, comment 3 to that section states that such evidence "may be outweighed by conduct of the defendant that is inconsistent with acceptance of responsibility." Comment 3 continues: "A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." As detailed above, just a few weeks after appearing before Magistrate Judge Robinson to express purported contrition for engaging in the conduct which gave rise to the previous charge against him, Mr. Bloch filed a frivolous, baseless $202 million RICO lawsuit against me and numerous other individuals and entities whom he believed wronged him by exposing his misconduct. There is no reason to believe that Mr. Bloch is more contrite now than he was at the time he filed his frivolous lawsuit. Indeed, Mr. Bloch's Privacy Act suit against OPM, which relates directly to his wiping of government computers, is still pending in the U.S. District Court for the District of Columbia. Moreover, his conduct even in the past few months, including the threats he has made to sue bloggers for defamation and civil conspiracy, suggests that he remains unrepentant and vindictive against those who discuss the wrongdoing for which he has supposedly accepted responsibility. Finally, the downward departure provided for under § 3E1.1 is also inappropriate here because, as described in the preceding paragraphs, Mr. Bloch's conduct warranted an enhancement under § 3C1.1 for obstructing or impeding the administration of justice. As comment 4 to § 3E1.1 states, such an enhancement "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." There is nothing here to suggest otherwise.

## IV. Conclusion

Mr. Bloch spent his years as a presidential appointee in the Office of Special Counsel engaging in a multitude of unethical and illegal actions that betrayed the public trust and silenced whistleblowers. When his misconduct came to light and the United States opened an investigation, Mr. Bloch went to great lengths to impede the investigation, to destroy evidence, and to hide his wrongdoing. Among other things, Mr. Bloch hired an outside vendor to perform a complete wipe of his computer and those of other OSC employees in order to deprive the Government of evidence essential to its investigation. Thereafter, he lied to Congress about his misconduct.

The Government could have charged Mr. Bloch with an array of felonies, but chose instead to pursue only two misdemeanor charges – the instant charge and a contempt of Congress charge that it moved to dismiss in December 2012. Throughout the criminal proceedings against Mr. Bloch, the Government has sought the minimum sentence possible for Mr. Bloch, citing a purported acceptance of responsibility belied by Mr. Bloch's actions in suing or threatening to sue his detractors. The Government's position has also ignored the many facts that warrant an enhancement of his sentence under the United States Sentencing Commission Guidelines.

It would be a gross miscarriage of justice to allow Mr. Bloch to escape with anything less than the maximum penalty recommended under the Sentencing Guidelines, and it would convey to others in positions of power that they can silence internal critics, destroy evidence and obstruct justice without fear of meaningful consequences. We therefore request that this court consider the totality of the circumstances and the enhancements discussed above, which raise the offense level to 10, in handing down a sentence that includes a significant period of imprisonment and the payment of the maximum fine recommended under the Sentencing Guidelines.

Sincerely,

Debra S. Katz

Enclosures